UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ADC Telecommunications, Inc.,

        Plaintiff,

                                        MEMORANDUM OPINION
v.                                   AND ORDER
                                        Civil No. 04-1590 ADM/JSM

Switchcraft, Inc.,

        Defendant.

_____

Alan G. Carlson, Esq. and Samuel A. Hamer, Esq., Carlson Caspers Vandenburgh & Lindquist, P.C., Minneapolis, MN, on behalf of Plaintiff.

Thomas I. Ross, Esq. and Paul B. Stephens, Esq., Marshall, Gerstein & Borun LLP, Chicago, IL, and Laura J. Hein, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On October 26, 2005, oral argument before the undersigned United States District Judge was heard on Plaintiff ADC Telecommunications, Inc.'s ("ADC") Motion to Dismiss [Docket No. 66]. In its Amended Complaint [Docket No. 33], ADC alleges that Defendant Switchcraft, Inc. ("Switchcraft") is infringing ADC's '378 patent. Switchcraft denies infringement and filed a Counterclaim [Docket No. 37] for a declaratory judgment that the '378 patent is invalid, or in the alternative, that neither Switchcraft's present nor "further video jack(s)" infringe the '378 patent. ADC filed this Motion to Dismiss with respect to the "further video jack(s)" portion of Switchcraft's counterclaim. For the reasons stated below, ADC's Motion is granted.

## II. BACKGROUND

ADC owns U.S. Patent No. 6,045,378 ("the '378 patent"), entitled "Switching Coaxial Jack with Impedance Matching." The patent concerns a coaxial switching jack with specially

shaped structures (called "waveguides" or "fins") that reduce impedance mismatches and improve signal strength between communicating pieces of equipment in central communications facilities. Lauer Decl. [Docket No. 70] Ex. A. The purpose and function of switching jacks and the '378 patent are described in the Court's September 9, 2005 Order [Docket No. 85] and will not be repeated here.

On April 4, 2000, the '378 patent issued. Lauer Decl. Ex. A. In 2001, Switchcraft developed a "flat cover design" video jack. Cooper Decl. ¶ 4 [Docket No. 97]. Steven R. Cooper ("Cooper"), Switchcraft's Director of Engineering, asserts that "[t]he tooling for this original flat cover design was released in June 2001, which shows that Switchcraft was prepared to go ahead with the commercialization of the original flat cover design at that time." Id. However, because the "flat cover design" had possible crosstalk concerns, it was modified by adding "crosstalk ribs" in mid to late 2001. Id. ¶ 6. Switchcraft began selling the "PCB and crosstalk rib design" video jacks in early 2002. Id. ¶ 3. It is "PCB and crosstalk rib design" video jacks that ADC alleges infringe the '378 patent. Id.

On April 15, 2004, ADC filed its first Complaint in this matter, accusing Switchcraft of infringement on its patent. Compl. [Docket No. 1]. Keith A. Bandolik ("Bandolik"), Chief Executive Officer and President of Switchcraft, states that on May 10, 2004, he and Switchcraft's counsel discussed the present case with ADC's president and in-house counsel. Bandolik Decl. ¶ 4 [Docket No. 98]. Bandolik asked Pat O'Brien ("O'Brien"), ADC's President, what to do about Switchcraft's allegedly infringing video jacks, and O'Brien told Bandolik to "remove the fins." Id. Bandolik asserts that Switchcraft then determined that it would revert back to the previous "flat cover design" in an effort to avoid litigation. Id. ¶ 5. Cooper states

"that meant revitalizing the original flat cover configuration, and creating an updated flat cover or 'no fin' video jack."  Cooper Decl. ¶ 9.

On June 15, 2004, Switchcraft filed its Answer and Counterclaim [Docket No. 3] for a declaratory judgment.  On August 16, 2004, Switchcraft's counsel wrote to ADC's counsel, identifying the various Switchcraft video jacks by product number.  Lauer Decl. Ex. C.  On September 3, 2004, Switchcraft answered ADC's interrogatories and again identified Switchcraft video jacks by product number.  Lauer Decl. Ex. D at 22.  On October 8, 2004, Switchcraft supplemented its interrogatory responses, identifying more thoroughly the Switchcraft video jacks by product number.  Lauer Decl. Ex. E at 5-6.  None of these Switchcraft submissions included any information about the "TZ design."  See Lauer Decl Exs. C, D, E.

On October 20, 2004, Switchcraft's counsel sent a letter to ADC's counsel, confirming the delivery to ADC the previous day of "materials depicting and representing the new 'no-fin' video jack design with which Switchcraft proposes to replace its current video jack line."  Lauer Decl. Ex. F.  ADC's counsel responded on October 29, 2004, asking for more information about Switchcraft's "proposed redesign."  Lauer Decl. Ex. H.  On November 12, 2004, Switchcraft's counsel responded with more information about the new proposed redesign, which would be used to replace Switchcraft's standard-size video jack product line, and in addition "enclose[d] drawings of a new, slightly modified version of that design with which Switchcraft will replace its mid-size video jack product line."  Lauer Decl. Ex. I.

On December 22, 2004, Mr. Michael Ouyang ("Ouyang"), ADC's in-house patent counsel, indicated at a settlement conference that the new proposed "no fin" redesign infringed the '378 patent, but just barely.  See Cooper Decl. ¶ 11; Bandolik Decl. ¶ 6.  Ouyang "spread his

3

hands apart indicating a sliding scale of infringement" and said "'you're almost there [indicating that the proposed "no fin" redesign was just short of midway along the scale]; but we want you to be over here [the far end of [the] noninfringing side].'"  Cooper Decl. ¶ 11.  Switchcraft then further modified its new proposed redesign.  See id. ¶ 12.

On May 18, 2005, Switchcraft again supplemented its interrogatory answers, identifying for the first time video jacks with product numbers ending in "TZ": VJHD75TZ, MVJ75TZ, and VJSD75TZ.  Lauer Decl. Ex. J at 5-6.  ADC responded the following day, noting that Switchcraft had identified three new video jacks and requesting samples of each.  Lauer Decl. Ex. K.  On May 23, 2005, Switchcraft responded to ADC's requests for admission, and affirmatively admitted that Switchcraft had not sold and did not have a scheduled release date for beginning commercial sales of any "further video jack(s)."  Lauer Decl. Ex. O at 11.  On that same date, Switchcraft responded to a third set of interrogatories, identifying the "TZ design" video jacks as the "further video jack(s)" referenced in its counterclaim, and stated that "Switchcraft intends to introduce it[s] new video jack design this summer or as soon as it can be conclusively cleared under the '378 patent."  Lauer Decl. Ex. P at 2.  Cooper later stated that "Switchcraft has set November 2005 for its commercial release of the TZ midsize and standard size video jacks."  Cooper Decl. ¶ 14.  On July 1, 2005, Switchcraft's counsel sent ADC's counsel computer generated drawings and samples of the TZ design video jacks.  Lauer Decl. Ex. L.  On July 26, 2005, Switchcraft sent ADC's counsel tooling photos and tooling equipment invoices for the TZ design video jacks.  Cooper Decl. ¶ 13.  On July 28, 2005, Switchcraft's counsel wrote ADC's counsel asking whether ADC considered the TZ design to infringe the '378 patent.  Lauer Decl. Ex. M.

## III. DISCUSSION

**A.     Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1). "Article III limits federal jurisdiction to suits that address 'a real and substantial controversy . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc., 363 F.3d 1361, 1372 (Fed. Cir. 2004), citing Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 241 (1937). "In the declaratory judgment context, 'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Id., citing Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

The Federal Circuit has developed a two part test for determining in the patent-based declaratory judgment context whether there is a sufficient case or controversy to give rise to jurisdiction: "there must be both (1) an explicit threat or other action by [ADC], which creates a reasonable apprehension [in Switchcraft] that it will face an infringement suit," and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." Sierra Applied Scis., Inc., 363 F.3d at 1373. "The burden is on [Switchcraft] 'to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [counterclaim] was filed.'" Id., citing Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc., 787 F.2d 572, 575 (Fed. Cir. 1986).

**B.      Reasonable Apprehension of Suit**

ADC argues that Switchcraft could not have had a reasonable apprehension of suit with respect to "further video jack(s)" (or specifically, the TZ design)[1] because ADC never made any specific or general threats about further video jacks or the TZ design.  At the time the counterclaim was filed, the TZ design had not yet been created and therefore ADC could not have threatened legal action.  ADC has merely filed suit with respect to Switchcraft's video jacks that are currently made and sold, which does not provide Switchcraft a reasonable apprehension of suit with respect to the TZ design.

Switchcraft responds that the instant lawsuit shows ADC's willingness to file suit against Switchcraft's video jacks and is enough to satisfy the first prong of the justiciability test. Switchcraft cites to two cases to support its contention: 3M Co. v. Kinik Co., No. Civ. 04-123, 2004 WL 1328268, at*6 (D. Minn. June 15, 2004), and C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 879-82 (Fed. Cir. 1983).  However, both 3M Co. and C.R. Bard explain that a history of infringement suits or a current lawsuit is just one factor to consider when analyzing the totality of the circumstances to determine whether there is a reasonable apprehension of suit.  3M Co., 2004 WL 1328268, at *6; C.R. Bard, Inc., 716 F.2d at 881.  Switchcraft has cited no case where prior or current litigation alone was sufficient to create a reasonable apprehension of litigation, and consequently, the Court finds this contention to be without merit.  See Royal Pet Inc. v. Edwards, No. 05-825, 2005 WL 2290826, at *4 (D. Minn. Sept. 20, 2005).

Switchcraft also alleges that ADC's refusal to advise Switchcraft whether the TZ design

---

[1] Because Switchcraft identified its "TZ design" video jacks as the "further video jack(s)" in its interrogatory responses, this Order will now refer to the "TZ design" video jacks and the "further video jack(s)" interchangeably.  See Lauer Decl. Ex. P at 2.

infringes the '378 patent gives rise to a reasonable apprehension of suit. In support of this theory, Switchcraft relies upon Fina Research, S.A. v. Baroid Ltd., 141 F.3d 1479, 1484 (Fed. Cir. 1998). However, in Fina Research, the court found the defendant's failure to covenant not to sue was only a factor because the defendant had also written two strongly worded letters which suggested a reasonable apprehension of litigation. In the instant case, while ADC may have implied at the December 2004 settlement conference that Switchcraft's previous proposed redesign was not sufficiently distinct to steer clear of infringement, ADC has not made any comments or committed any actions with respect to the TZ design to give Switchcraft a reasonable apprehension of litigation.

In addition, in determining jurisdiction, the focus must be on actions known to Switchcraft at the time the counterclaim was filed, and therefore, comments made at a December 2004 settlement conference have no impact on the Court's determination with respect to Switchcraft's counterclaim filed six months before the settlement conference. Because Switchcraft has not cited any words or actions on the part of ADC that would give rise to a reasonable apprehension of litigation with respect to the TZ design or any other "further video jack(s)," the first prong of the justiciability test is not satisfied.

**C.     Concrete Steps Taken Toward Infringement**

Because Switchcraft has not satisfied the first prong of the Federal Circuit's test, the Court does not have jurisdiction over Switchcraft's declaratory judgment action regarding "further video jack(s)." However, even if Switchcraft had satisfied the first prong of the inquiry, jurisdiction is also lacking because Switchcraft has failed to satisfy the second prong of the inquiry. Switchcraft has committed no "present activity which could constitute infringement"

with respect to the TZ design because the TZ design video jacks were not being made or sold at the time that Switchcraft filed its counterclaim. Therefore, the inquiry turns to whether Switchcraft had taken "concrete steps . . . with the intent to conduct [activity which could constitute infringement]." Sierra Applied Scis., Inc., 363 F.3d at 1373.

ADC argues Switchcraft could not have taken "concrete steps" sufficient to give rise to jurisdiction on June 15, 2004 because the TZ design was not of sufficient reality and immediacy at that time. See id. at 1378-79. The TZ design was not of sufficient reality because it was not "substantially fixed" when the counterclaim was filed. It was not of sufficient immediacy because the time period between the filing of the declaratory judgment action (June 15, 2004) and the proposed commercial release of the TZ design video jacks (November 2005) is too great. Switchcraft responds that the timing of the manufacture and sale of the potentially infringing product is just one factor to consider, and Sierra allows for variability of designs as the product is developing, as long as the variability is not too great.

In Lang v. Pac. Marine & Supply Co., 895 F.2d 761 (Fed. Cir. 1990), the plaintiffs sought a declaratory judgment that a ship's hull being manufactured by the defendants would, when finished, infringe plaintiffs' patent. The court held that the plaintiffs failed to meet the actual controversy requirement because "the ship's hull would not be finished until at least 9 months after the complaint was filed," and defendants had not "distributed sales literature, prepared to solicit orders, or engaged in any activity indicating that the ship would soon be ready for sea." Id. at 764-65. Similarly, in Sierra, the court held that the declaratory judgment action lacked the requisite immediacy because the product at issue was not built and operational until about one year after the complaint was filed. 363 F.3d at 1379.

In this case, the TZ design lacks the requisite immediacy. Switchcraft filed its counterclaim for a declaratory judgment on June 15, 2004, and while Switchcraft did supply ADC with materials depicting a proposed "no fin" redesign on October 19 and November 12, 2004, more than eleven months passed before Switchcraft identified video jacks with product numbers ending in "TZ" to ADC. Lauer Decl. Ex. J at 5-6. On May 23, 2005, Switchcraft affirmatively admitted that it had not sold and did not have a scheduled release date for beginning commercial sales of any "further video jack(s)," and also identified for the first time the "TZ design" video jacks as the "further video jack(s)" referenced in its counterclaim. Lauer Decl. Exs. O at 11, P at 2. Switchcraft did not send ADC computer generated drawings and samples of the TZ design video jacks until July 1, 2005, and tooling photos and tooling equipment invoices until July 26, 2005. Lauer Decl. Ex. L; Cooper Decl. ¶ 13. Switchcraft now identifies November 2005, more than seventeen months after the filing of its counterclaim, as the projected date for commercial release of the TZ design video jacks. Cooper Decl. ¶ 14. The amount of time between claim and activity which may constitute infringement in this case is greater than the period of time found to be too long in both Lang and Sierra. Defendant's claim lacks the requisite immediacy.

In addition, the evidence suggests that the TZ design was also not "substantially fixed" at the time of the filing of the counterclaim to be of sufficient reality. "Our concern is not that the [product at issue] will never be produced, but rather that because of the relatively early stage of its development, the design which is before us now may not be the design which is ultimately produced and marketed." Sierra, 363 F.3d at 1379, citing Int'l Harvester Co. v. Deere & Co., 623 F.2d 1207, 1216 (7th Cir. 1980). Defendant claims that the TZ design is a revitalized

9

version of its 2001 flat cover design in support of its argument that the TZ design was substantially fixed as of the date of the filing of its counterclaim.  However, the flat cover design was modified in 2001 or 2002 to address potential crosstalk problems by adding "crosstalk ribs," and Switchcraft allegedly returned to the flat cover design in 2004 only after ADC accused Switchcraft's current video jacks of infringing the '378 patent.

Additionally, Switchcraft did not simply return to the 2001 flat cover design video jack but rather proceeded to modify it further.  Switchcraft first provided ADC with drawings of its new proposed "no fin" redesign in October 2004, and provided additional modified drawings in November 2004.  Switchcraft did not identify the TZ design by product number until May 2005, and did not provide ADC with drawings and samples of the TZ design video jack until July 2005.  The drawings and samples of the TZ design video jack provided to ADC in July 2005 had been further altered from the proposed "no fin" redesigns provided to ADC in October and November of 2004.  At most, Switchcraft had an intent to design around ADC's patent at the time it filed its counterclaim on June 15, 2004, and the future TZ design was still fluid at that time.  The evidence suggests that the TZ design did not become substantially fixed until sometime near May to July of 2005, which can not give rise to sufficient reality to support Switchcraft's declaratory judgment action at the time of the filing of its counterclaim.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that ADC's Motion to Dismiss [Docket No. 66] Switchcraft's declaratory judgment action with respect to "further video jack(s)" is **GRANTED**.

BY THE COURT:

      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: December 21, 2005.